**United States District Court**
For the Northern District of California

**E-FILED on** 2/21/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WOBURN RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and AURELIO "RAY" CISNEROS<br><br>Defendants. | No. 5:11-CV-05235-RMW<br><br>ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL<br><br>**[Re Docket Nos. 25, 28, 38, 46, 48, 51, 53, 55, & 60]** |
| LABORERS LOCAL 235 BENEFIT FUNDS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and AURELIO "RAY" CISNEROS,<br><br>Defendants. | No. 3:11-CV-05372-JSW |

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF,
AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW

| | |
|---|---|
| CARBON COUNTY RETIREMENT BOARD, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>OMNIVISION TECHNOLOGIES, INC., SHAW HONG, ANSON CHAN, and AURELIO "RAY" CISNEROS<br><br>        Defendants. | No. 5:11-CV-06593-LHK |

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW

2

Woburn Retirement System, Oakland County Employees' Retirement System, Laborers' District Council and Contractors Pension Fund of Ohio (collectively, "Institutional Investors Group"); Southeastern Pennsylvania Transportation Authority ("SEPTA"); Carbon County Retirement Board ("CCRB"); Macomb County Employees' Retirement System ("Macomb County"); Dauphin County Retirement Board ("Dauphin County"); the Government of Puerto Rico Teachers Retirement System ("Puerto Rico TRS"); William C. Dougherty; Kenneth Gold ("Gold"); and GAL-Nihul Kupot Gemel Leovdei Hora'a ("GAL") have filed motions for consolidation of related cases, appointment of lead plaintiff and approval of selection of lead counsel. GAL withdrew its motion on February 1, 2012. On February 10, 2012, the Court held a hearing to consider the motions. Having considered the papers submitted by the parties and arguments of counsel, and for the reasons set forth below, the Court: (1) grants the motion for consolidation of related cases; (2) appoints the Institutional Investors Group as lead plaintiff; and (3) approves the Institutional Investors Group's selection of lead counsel.

## I. BACKGROUND

OmniVision Technologies, Inc. ("OmniVision") is a Delaware corporation with its principal executive offices in Santa Clara, California. OmniVision engages in designing, developing, and marketing semiconductor image-sensor devices worldwide, including image sensors used in smartphone cameras. At all relevant times, Shaw Hong was its CEO and President, Anson Chan was its Vice President of Finance, and Aurelio "Ray" Cisneros was its Vice President of Worldwide Sales. Throughout the Class Period, OmniVision's common shares were actively traded on the NASDAQ.

OmniVision had an exclusive contract with Apple to provide imaging sensors for Apple's popular and lucrative third and fourth generation iPhones (the iPhone 3GS and the iPhone 4 models). These models were released on June 9, 2009 and June 21, 2010, respectively.

On August 26, 2010, November 30, 2010, February 24, 2011, and May 26, 2011, respectively, OmniVision issued press releases announcing quarterly results for the respective fiscal quarters and making favorable projections and statements about OmniVision's position in the

marketplace and prospects going forward. These and other public statements made by OmniVision during the Class Period contained allegedly false and misleading statements about OmniVision's place in the smartphone image sensor market, its development and production of image sensors, and the market's acceptance of its technology, among other things.

On August 25, 2011, after the close of the markets, OmniVision issued a press release announcing financial results for its first fiscal quarter of 2012. While OmniVision continued to make statements about its position in the marketplace and its prospects going forward in this and subsequent public statements, OmniVision's earning guidance for the second fiscal quarter fell far below analyst expectations. Despite OmniVision's attempts to avoid questions concerning its contract with Apple and the much anticipated fifth generation phone set to be released in the following quarter, analysts feared that OmniVision's exclusive contract with Apple had gone by the wayside, as noted in an August 26, 2011 *Reuters* article. These fears were confirmed when, on October 14, 2011, Apple's fifth generation iPhone 4S was released, and a tear down of the phone confirmed that significant parts of the camera's image sensor were made by Sony Corp. rather than OmniVision. On November 7, 2011, OmniVision issued a press release announcing that it was further reducing its second quarter projections by 20%.

As a result of the revelation to the market that OmniVision had lost its lucrative and exclusive contract to produce image sensors for the Apple iPhone, OmniVision's shares tumbled, from a Class Period high of $36.42 per share on May 26, 2011 down to a closing price of $15.95 per share on October 14, 2011.

Plaintiffs allege that defendants violated the securities laws by failing to disclose to investors facts known to them but concealed from the investing public during the Class Period: (a) that it had lost its lucrative, high-profile and exclusive contract with Apple; (b) that competition was eroding its position in the smartphone market; (c) that delays in the production of its camera products were threatening its prospects; and (d) that it lacked a reasonable basis for its favorable statements about its position in the market and prospects going forward. As a result of these violations, the members of the Class allege that they incurred substantial damages.

Plaintiff Woburn filed an initial complaint on October 26, 2011. A notice of this first complaint was published on October 26, 2011 in *Global Newswire*. All movants made motions to consolidate the actions and for appointment as lead plaintiff on December 27, 2011. Eight of the nine plaintiffs filed motions in opposition on January 10, 2012, each asserting a claim for lead plaintiff, arguing that it had the largest financial interest in the case. The Institutional Investors Group, CCRB, Puerto Rice TRS, and Dauphin County filed replies each arguing for appointment as lead plaintiff. Gold filed a reply arguing for appointment as co-lead plaintiff.

At least two other securities class action lawsuits have been brought against OmniVision in this district: *Laborers Local 235 Benefit Funds v. OmniVision Technologies Inc., et al.*, 11-CV-05372 (JSW) filed on November 4, 2011; and *Carbon County Retirement Board v. OmniVision Technologies, Inc., et al.*, 11-CV-06593 (LHK) filed on December 21, 2011. Each of these actions alleges claims for violations of the Exchange Act and Securities Exchange Commission (SEC) Rule 10b-5 on behalf of investors who purchased or otherwise acquired OmniVision common stock during the class period. All movants seek consolidation of the related cases. They disagree over who should be appointed lead plaintiff.

## II. ANALYSIS

### A. Consolidation of Actions

"When the suits subject to consolidation involve securities fraud, 'a court shall not make the [the lead plaintiff and counsel determination] until after the decision on the motion to consolidate is rendered.'"*Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1065 (C.D. Cal 1999)(citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). "After the court decides the motion to consolidate, 'the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions' as soon as practicable." *Id*. Thus, before the Court considers whether to appoint lead plaintiff, it must determine whether to consolidate the actions.

Here, consolidation of the actions is appropriate under Federal Rule of Civil Procedure 42(a). "In securities actions where the complaints are based on the same statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will

1  not be prejudiced." *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1121
2  (S.D.N.Y. 1992) (internal quotation marks deleted). "Significantly, the existence of slight
3  differences in class periods, parties, or damages among the suits does not necessarily defeat
4  consolidation where essential claims and factual allegations are similar." *In re Microstrategy Inc.*
5  *Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000).

6        The actions at issue here involve common questions of law and fact. The actions assert
7  claims under the Exchange Act on behalf of investors who were allegedly defrauded by OmniVision
8  and certain of the Company's officers or directors. The actions allege substantially the same
9  wrongdoing, namely that defendants issued materially false and misleading statements and
10 omissions that artificially inflated OmniVision's stock price and when the truth emerged, the Class
11 was damaged when OmniVision's stock price crashed. There is no evidence that defendants will be
12 prejudiced, and defendants have stipulated to consolidation of *Woburn* and *Laborers*. Thus, the
13 Court hereby consolidates the three actions.

14       **B.**      **Lead Plaintiff Appointment**
15            **1.**      **Group Appointment**

16       A threshold question is whether the Woburn Retirement System, Oakland County
17 Employees' Retirement System and the Laborers' District Council and Contractors Pension Fund of
18 Ohio may properly seek appointment as a group. A district court need not accept as lead plaintiff
19 any proffered group of investors. *In re Baan, Co. Sec. Litig.*, 186 F.R.D. 214, 218-35 (D.D.C. 1999).
20 A number of cases have persuasively reasoned that a group must have a meaningful relationship
21 preceding the litigation and be united by more than the mere happenstance of having bought the
22 same securities. *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal.
23 1999) ("A group is not a proper group unless its members have a relationship that predates the
24 litigation."); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577 (N.D. Cal. 1999) ("Aggregation [of
25 individuals] solely for the purpose of creating a group that would have the 'largest financial interest
26 in the relief sought by the class' would seem to contravene the PSLRA's purpose of shifting control
27 of the litigation from the lawyers to the investors."). A number of other cases, however, have found
28

no problem with groups of unrelated members as lead plaintiffs pointing out that the governing statute, 15 U.S.C. § 78u-4, authorizes the appointment of a group. *See, e.g., Ferrari v. Gisch*, 225 F.R.D. 599, 608 (C.D. Cal. 2004).

The Court concludes that careful scrutiny of a proposed group should be made before the group is appointed as lead plaintiff. The key question is whether the proposed plaintiff group can effectively manage the litigation and direct lead counsel. Groups of unrelated members, particularly groups put together by counsel for the purpose of making the group the plaintiff with the largest financial loss, should rarely be recognized, as there would appear to be little reason to believe that they, as opposed to counsel who put the group together, would effectively manage the litigation. Here, however, there are good reasons to consider the Institutional Investors Group as an appropriate candidate for lead counsel. The group is a cohesive group of three pension funds that are sophisticated institutional investors. Each member provides retirement or pension benefits to its members. Although the Court has no doubt that counsel played a significant role in putting the group together, the members do appear to have independently analyzed the wisdom of participating as a group and have discussed and agreed upon coordinated management and oversight of the litigation. As discussed below, the group has the largest financial stake in the litigation and one of its members alone, the Laborers' District Counsel and Pension Fund of Ohio, has a larger stake than any other individual plaintiff. The Institutional Investors Group and its members have all the hallmarks of the lead plaintiff that Congress envisioned when enacting the PSLRA.

### 2. Largest Financial Stake

The PSLRA instructs district courts to select as lead plaintiff the one "most capable of adequately representing the interests of class members." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002)(citing 15 U.S.C. § 78u-4(a)(3)(B)(I)). The "most capable" plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as it meets the "typicality" and "adequacy" requirements of Rule 23. *Id*. If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, it becomes the presumptively most adequate plaintiff. *Id.* at 730.

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW

7

When determining the movant with the largest financial interest the courts generally look to the most inclusive class period in its evaluation. *See Schueneman v. Arena Pharms., Inc.*, No. 10-CV-1959-BTM, 2011 U.S. Dist. LEXIS 87373, *7-8 (S.D. Cal. Aug. 8, 2011). Therefore, the Court uses the period from August 27, 2010 to October 13, 2011 in making its determination.[1]

There is no prescribed method for determining which movant has the largest financial interest. *Id.* at 730 n. 4. The Ninth Circuit notes that "the court may select accounting methods that are both rational and consistently applied." *Id.* This Court has previously required parties to submit financial numbers based on the Olsten-Lax factors. *Aronson*, 79 F. Supp 2d. at 1157-58. This four-factored inquiry takes the whole class period and considers: (1) the number of shares purchased; (2) the number of net shares purchased ; (3) the total net funds expended; and (4) the approximate losses suffered. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997)).

In determining net amounts, courts most frequently use the Last In First Out ("LIFO") accounting methodology over First In First Out ("FIFO"). *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *37 (N.D. Cal. 2011) ("LIFO [is] the method favored by a majority of courts. . . . FIFO tends to overstate losses unless certain adjustments are made."). The Institutional Investors appear to have approximately double the LIFO loss of any of the other moving plaintiffs ($1,150,566 for the Institutional Investors Group versus $528,801 for Dauphin County). In fact, the Laborers' District Council and Contractors Pension Fund of Ohio, one of the members of the Institutional Investors Group, by itself has a larger financial than any of the other lead plaintiff candidates.

---

[1] In its opposition brief, consistent with its complaint, CCRB asserts that the most "plausible period is nine months shorter" than the class period alleged in the Woburn and Laborers 235 complaints. Dkt. No. 73. However, all other movants have adopted to the August 27, 2010 to October 13, 2011 class period. "At this stage, the court is wary of arguments advocating a shorter class period instead of the longest potential class period." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP 2008 U.S. Dist. LEXIS 64633, *2 (N.D. Cal. Aug. 22, 2008). Although the Laborers' District Council and Contractors Pension Fund of Ohio did not purchase shares of OmniVision stock during the class period urged by CCRB, the Oakland County Retirement System did and thus the Institutional Investors Group provides an appropriate class representative if a shorter class period is later deemed appropriate.

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW

8

Using the Olsten-Lax factors and the financial numbers submitted by the parties, the Institutional Investors Group has the largest amount of net shares purchased, the greatest losses using LIFO, and highest net funds expended.

### 3. Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure. Of the four prerequisites to class certification, only Rule 23's typicality and adequacy requirements are relevant at this stage. *See In re Cavanaugh*, 306 F.3d at 730.

With respect to typicality, courts look to whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009)(citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The claims of the Institutional Investors Group are typical of the claims of the Class. The Institutional Investors Group purchased OmniVision securities during the Class Period, suffered damages as a result of the Company's allegedly false and misleading statements, and possesses claims against OmniVision and certain of its officers or directors under the federal securities laws. Because the factual and legal bases of the Institutional Investors Group's claims are similar, if not identical, to those of the Class, the Institutional Investors Group satisfies the typicality requirement.

With respect to adequacy, Fed. R. Civ. P. 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class." This requirement is satisfied when the proposed lead plaintiff does not have interests antagonistic to the proposed class, and when the proposed lead plaintiff has retained experienced and capable counsel. *See Siegall v. Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 U.S. Dist. LEXIS 26780, at *15 (N.D. Cal. 2006). In addition, the

1  class representative must have a sufficient interest in the outcome of the case to ensure vigorous
2  advocacy. *See Hodges*, 263 F.R.D. at 532 (citing *Hanlon*, 150 F.3d at 730.

3  The Institutional Investors Group's interests appear sufficiently aligned with the Class to
4  meet the adequacy requirement. The Institutional Investors Group's interest in this action is shared
5  by the proposed class–recover losses that were allegedly caused by defendants' false and misleading
6  statements. Additionally, the counsel selected by the Institutional Investors Group has experience
7  with lawsuits brought under the federal security laws and have demonstrated their competency in
8  their papers filed to this Court. Further, the size of financial interest that the Institutional Investors
9  Group possesses in this case suggests that it will vigorously advocate on behalf of itself and the
10 proposed class.

### 4. Co-Lead Plaintiff

12 Movant Kenneth Gold asks to be appointed as co-lead plaintiff as a result of options
13 investments he purchased in OmniVision.

14 Courts have been cautious in creating subclasses for different groups in securities class
15 actions. *Miller v. Ventro Corp.*, No. C 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027, at *34 (N.D.
16 Cal. Nov. 28, 2001); *see* e.g., *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 480 (D.N.J. 1998)
17 ("Cendant II") (creating a subclass "would injure the purpose of the PSLRA by fragmenting the
18 plaintiff class and decreasing client control"). Courts that have allowed "group" plaintiffs have
19 usually disallowed "co-lead" plaintiffs. *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42
20 (S.D.N.Y. 1998). The mere fact that plaintiffs might have different types of securities does not
21 require a separate class or co-lead plaintiffs. *Miller*, 2001 U.S. Dist. LEXIS 26027, at *35 ("More
22 likely than not, the putative class in any large shareholder action will be composed of plaintiffs
23 whose portfolios differ in composition from one another. This however, does not justify the
24 appointment of potentially innumerable co-lead plaintiffs to ensure that each individual interest is
25 represented." (quoting *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998))).

26 Here, Gold has not demonstrated that a co-lead plaintiff is necessary and the cases that
27 appoint co-lead plaintiffs are distinguishable. In *Miller*, for example, a co-lead plaintiff was

28

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW

10

appointed because both parties vying for lead plaintiff conceded that potential differences between the bondholders and stockholders existed. Such is not the case here. Additionally, Gold acknowledged "that he does not have a larger financial interest in the litigation than a number of movants." Dkt. No. 71 at 1. Given his limited financial interest in the litigation, this court finds that Gold's speculations about possible conflicts do not rebut the statutory presumption that the Institutional Investors Group alone can vigorously pursue all available causes of action against all possible defendants under all available legal theories. *See Aronson*, 79 F. Supp. 2d at 1151.

### C. Lead Counsel Appointment

Subject to court approval, lead plaintiff movants are empowered to select and retain counsel to represent the class they seek to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). A court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734. Here, the Institutional Investors Group has selected and retained Barrack, Rodos & Baine and Branstetter, Stranch & Jennings, PLLC to serve as co-lead counsel for the Class. Both are competent and experienced firms that have handled many securities class actions. No party has questioned their expertise. Accordingly, the court approves the Institutional Investors Group's selection of lead counsel for the Class.

## III. ORDER

### CONSOLIDATION OF RELATED CASES

1. The following are related cases within the meaning of Civil Local Rule 3-12:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Woburn v. OmniVision Techs., Inc., et al.* | Case No. 5:11-cv-05235-RMW | Oct. 26, 2011 |
| *Laborers v. OmniVision Techs., Inc., et al.* | Case No. 3:11-cv-05372-JSW | Nov. 4, 2011 |
| *Carbon v. OmniVision Techs., Inc., et al.* | Case No. 5:11-cv-06593-LHK | Dec. 21, 2011 |

2. Pursuant to Federal Rule of Civil Procedure 42(a), these cases are hereby consolidated into Civil Acton No. 5:11-cv-05235-RMW for pretrial proceedings before this Court.

The consolidation action shall be captioned: "*In re OmniVision Technologies, Inc. Securities Litigation*."

3. All related actions that are subsequently filed in, or transferred to, this District shall be consolidated into this action for pretrial purposes unless otherwise ordered. This Order shall apply to every such related action, absent order of the Court. A party that objects to such consolidation, or to any other provision of this Order, must file an application for relief from this Order within thirty (30) days after the date on which a copy of the order is mailed to the party's counsel, pursuant to Paragraph 8, *infra*.

4. This Order is entered without prejudice to the right of any party to apply for severance of any claim or action, for good cause shown.

## MASTER DOCKET AND CAPTION

5. The docket in Civil Action No. 5:11-cv-05235-RMW shall constitute the Master Docket for this action.

6. Every pleading filed in the consolidated action shall bear the following caption:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re OMNIVISION TECHNOLOGIES, INC. LITIGATION ) ) ) | Case No. 5:11-cv-05235-RMW |
| This Document Relates To:           ) ) ALL ACTIONS.          ) ) | CONSOLIDATED CLASS ACTION |

7. The file in Civil Action No. 5:11-cv-05235-RMW shall constitute a Master File for every action in the consolidated action. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:". When a pleading applies only to some, not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the

1 document applies, along with the last name of the first-listed plaintiff in said action (*e.g.*, "No. 5:11-
2 cv-05235-RMW (*Woburn Retirement System*)").

3       8.     The parties shall file a Notice of Related Cases pursuant to Civil Local Rule 3-12
4 whenever a case that should be consolidated into this action is filed in, or transferred to, this District.
5 If the Court determines that the case is related, the clerk shall:

6           (a)     place a copy of this Order in the separate file for such action;
7           (b)     serve on plaintiff's counsel in the new case a copy of this Order;
8           (c)     direct that this Order be served upon defendants in the new case; and
9           (d)     make the appropriate entry in the Master Docket.

10           APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

11       9.     The Institutional Investors Group consisting of Woburn Retirement System, Oakland
12 County Employees' Retirement System, and Laborers District Council and Contractors Pension Fund
13 of Ohio is appointed as lead plaintiff for the putative class and any subsequently consolidated or
14 related action to represent the interests of the putative class.

15       10.     Lead plaintiffs' selection of lead counsel for the putative class is hereby approved.
16 Barrack, Rodos & Baine and Branstetter, Stranch & Jennings, PLLC are appointed co-lead counsel
17 pursuant to § 21D(a)(3)(B)(v) of the Exchange Act.

18       11.     Lead counsel has the authority to speak for, and enter into agreements on behalf of,
19 plaintiffs in all matters regarding pretrial procedures, discovery, and settlement negotiations. Lead
20 counsel shall manage the prosecution of this litigation to avoid duplicative or unproductive
21 activities. Lead counsel shall be responsible for coordination of all activities and appearances on
22 behalf of plaintiffs and for dissemination of notices and orders. Lead counsel shall be responsible for
23 communications with the Court. Lead counsel shall maintain a master service list of all parties and
24 counsel.

25       12.     Defendant's counsel may rely upon agreements made with lead counsel. Such
26 agreements shall be binding on all plaintiffs.

27
28

PLEADINGS AND MOTIONS

13. Defendants are not required to respond to the complaint in any action consolidated into this action, other than a consolidated amended complaint or a complaint designated as the operative complaint.

14. Lead Plaintiff shall file an amended complaint within sixty (60) days after entry of this Order, unless otherwise agreed upon by the parties. The amended complaint shall be the operative complaint and shall supersede all complaints filed in any of the actions consolidated herein.

15. Defendants shall respond to the amended complaint within sixty (60) days after service, unless otherwise agreed by the parties. If defendants file any motions directed at the amended complaint, any opposition shall be filed within sixty (60) days after the filing of such motion(s) and any reply shall be filed within thirty (30) days after filing of the opposition, unless otherwise agreed upon by the parties.

16. The parties shall serve all papers on each other by ECF filing, email, hand, or by overnight delivery, unless otherwise agreed upon by the parties. Notwithstanding the foregoing, defendants may serve plaintiffs' counsel, other than lead counsel, by first-class mail, unless otherwise agreed upon by the parties.

DATED: February 21, 2012

_____
RONALD M. WHYTE
United States District Judge

ORDER CONSOLIDATING RELATED CASES, APPOINTING THE INSTITUTIONAL INVESTORS GROUP AS LEAD PLAINTIFF, AND APPROVING SELECTION OF LEAD COUNSEL
No. 5:11-CV-05235-RMW